UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
|---|---|---|---|
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Patrick Whalen | Jose Zelidon-Zepeda |

Attorneys Present for Intervenor Defendants:

Stacey Leyton

Andrew Kushner

**Proceedings:**    TELEPHONE HEARING ON DEFENDANTS' MOTION TO DISMISS (ECF No. 20, filed March 2, 2020)

INTERVENOR-DEFENDANT'S MOTION TO DISMISS (ECF No. 25, filed April 7, 2020)

## I. INTRODUCTION

This case concerns a federal preemption challenge to three discrete provisions of a recently enacted California worker classification law that, along with other related but unchallenged provisions, govern the scope of a specific exemption from that law.

Plaintiff Western States Trucking Association ("WSTA") filed this action against defendant Xavier Becerra, in his official capacity as Attorney General of the State of California (the "State"), on December 19, 2019. See ECF No. 1 ("Compl."). On March 2, 2020, the Court granted a motion by the International Brotherhood of Teamsters ("IBT") to intervene as an additional defendant. See ECF No. 21.

That same day, the State filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See ECF No. 20 ("CA MTD"). IBT filed a motion to dismiss pursuant to the same rules on April 7, 2020. See ECF No. 25 ("IBT MTD"). WSTA filed a consolidated opposition to both motions on April 27, 2020. See ECF No.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
|---|---|---|---|
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

26 ("Opp."). The State and IBT filed replies on May 4, 2020. See ECF No. 30 ("CA Reply"), ECF No. 31 ("IBT Reply").

The Court held a hearing on May 18, 2020. The motions are now before the Court. Having considered the parties arguments and submissions, the Court finds and concludes as follows.

## II. FACTUAL AND STATUORY BACKGROUND

### A. The California Supreme Court Adopts A New Worker Classification Standard

In California, whether a worker is classified as an "employee" or an "independent contractor" changes the obligations that an employer has to that worker. Before 2018, California courts and agencies applied the standard set forth in S.G. Borello & Sons, Inc. v. Department of Industrial Relations, 48 Cal. 3d 341 (1989), to determine whether a worker should be classified as an employee or an independent contractor. Borello required courts and agencies to consider multiple factors that focused on the kind of work the worker performed, and the degree of control the employer exercised over the worker, to make that classification. See Borello, 48 Cal. 3d at 351-55.

The California Supreme Court announced a departure from that worker classification standard in Dynamex Operations West v. Superior Court, 4 Cal. 5th 903 (2018). Dynamex held that courts and regulators must henceforth apply a three-part test (the "ABC test"), not the multi-factor standard set forth in Borello, to determine whether a worker will be classified as an employee, or an independent contractor, for certain purposes of California labor law. Id. at 916-17. Pursuant to the ABC test, a worker is presumptively classified as an employee "unless the hiring entity establishes (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact, (B) that the worker performs work that is outside the usual course of the hiring entity's business, and (C) that the worker is customarily engaged in an independently established trade, occupation, or business, the worker should be considered an employee and the hiring business an employer under the suffer or permit to work standard in wage orders." Id. at 964. The "failure to prove any one of these three prerequisites" is "sufficient" to "establish that the worker is an included employee, rather than an excluded independent contractor[.]" Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

### B.     AB 5 Codifies The New Standard, With Many Exemptions

The California State Legislature codified the ABC test in 2019 by enacting AB 5, which the Governor signed into law on September 18, 2019. Now enrolled as California Labor Code § 2750.3, subdivision (a)(1) of the statute provides that—for purposes of the California Labor Code, the California Insurance Code, and the Industrial Welfare Commission—"a person providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity demonstrates that all of the following conditions are satisfied: (A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact[;] (B) The person performs work that is outside the usual course of the hiring entity's business[;] (C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed." Cal. Labor Code § 2750.3(a)(1).

The balance of the statute establishes an extensive and detailed array of industry-specific exemptions that carve out certain discrete types of business activities from the ABC test that subdivision (a)(1) otherwise requires. See Cal. Labor Code §§ 2750.3(b)-(j). Relevant here, subdivision (f) provides that "[s]ubdivision (a) and the holding in Dynamex do not apply to the relationship between *a contractor and an individual performing work pursuant to a subcontract in the construction industry*, and instead the determination of whether the individual is an employee of the contractor shall be governed by Section 2750.5 and by Borello, if the contractor demonstrates" that it satisfies a specified list of criteria. See Cal. Labor Code § 2750.3(f) (emphasis added). Although one criterion requires a construction contractor seeking to invoke the exemption to demonstrate that "[t]he subcontractor" it hired "is licensed by the Contractors State License Board ['CSLB'] and the work is within the scope of that license," id. § 2750.3(f)(2), this requirement does "not apply" if the subcontractor at issue "provid[es] construction trucking services for which a contractor's license is not required" by other provisions of state law, "provided that" another list of criteria is also satisfied, id. § 2750.3(f)(8)(A).[1]

---

[1] For the purposes of claiming this exception from the exemption criteria, the statute defines "construction trucking services" as "trucking services provided in the construction industry pursuant to a contract with a *licensed contractor*" using large or specialty commercial vehicles. See Cal. Labor Code § 2750.3(f)(8)(C) (emphasized added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** 'O'

| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
|---|---|---|---|
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

Among those additional criteria is proof that a subcontractor meets two conditions: "(iii) [t]he subcontractor utilizes its own employees to perform the construction trucking services, unless the subcontractor is a sole proprietor who operates their own truck to perform the entire subcontract and holds a valid motor carrier permit issued by the Department of Motor Vehicles"; and "(iv) [t]he subcontractor negotiates and contracts with, and is compensated directly by, the licensed contractor." Id. §§ 2750.3(f)(8)(A)(iii)-(iv). The statute further provides in this respect that "[f]or any work performed after January 1, 2020, any business entity that provides construction trucking services to a licensed contractor utilizing more than one truck *shall be deemed* the employer for all drivers of those trucks." Id. § 2750.3(f)(8)(B) (emphasis added).

### C. WSTA Members Provide Subcontracted Trucking Services To Construction Contractors, And Sometimes Hire Other Subcontractors

WSTA is an industry association that represents providers of construction trucking services. Compl. ¶ 5. WSTA does not allege that its members hold construction contracting licenses, or otherwise operate as construction contractors. Rather, its members subcontract to provide trucking services *to* such construction contractors. Id. ¶ 7. Because construction trucking jobs are uncertain and involve irregular fluctuations in demand, id. ¶¶ 8-11, in many instances, a construction trucking subcontractor will not have enough trucks or drivers—or the right kinds of trucks or drivers—available to perform the obligations in its subcontract. Id. When that happens, the trucking company holding the trucking services subcontract will itself subcontract with additional trucking companies to fulfill its contractual obligations to the construction contractor. Id. ¶¶ 7, 12-13, 24. According to WSTA, the independent contractor model underlying these sorts of transactions is essential to the construction trucking services industry because it enables trucking companies to provide flexible services that meet the demands of construction contractors, and the obligations under construction trucking subcontracts. See generally id. ¶¶ 8-26

### D. WSTA Files This Suit Challenging Parts Of One Exemption To AB 5

WSTA does not allege in this action that the ABC test contained in California Labor Code § 2750.3(a)(1) is itself preempted as applied to trucking companies.[2] Instead, WSTA

---

[2] That issue is the subject of a separate, unrelated action pending in the United States District Court for the Southern District of California. See California Trucking Ass'n v. Becerra, No. 18-CV-02458-BEN-BLM, (S.D. Cal.). An appeal of that court's preliminary

Case 5:19-cv-02447-CAS-KK Document 33 Filed 05/18/20 Page 5 of 14 Page ID #:263

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
|---|---|---|---|
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

claims that the three "discrete" provisions discussed above—California Labor Code §§ 2750.3(f)(8)(A)(iii)-(iv), and (f)(8)(B)—impose obligations on construction trucking companies to classify their workers as employees in a manner that is proscribed and preempted by the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501 et seq., which prohibits states from enforcing any law related to the price, route, or service of a motor carrier. See Compl. ¶¶ 45-56.

WSTA's contention turns on an interpretation that California Labor Code § 2750.3(f)(8) is not "an additional criterion that must be met" for a construction contractor to obtain an exemption from the ABC test set forth in subdivision (a)(1), but rather independent criteria establishing "a separate exception applicable to . . . subcontractors providing construction trucking services for which a contractor's license is not required." See Compl. ¶ 29. According to WSTA, the challenged provisions of California Labor Code § 2750.3(f)(8) should be read to prohibit "a construction trucking subcontractor of any size" from "contract[ing] with other independent trucking companies or owner-operators" and "make[] employment an explicit mandate" in the industry. Id. ¶¶ 31-34. WSTA alleges that these changes will "result in increased prices charged by motor carriers" and "severely limit the types of services they can provide and the routes they can utilize," id. ¶¶ 48-51, and on this basis, it claims the "offending provisions of . . . subdivision (f)(8) are preempted by the FAAAA," id. ¶ 52.

## III. RELEVANT LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" possessing the power to hear cases only when "authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A motion to dismiss an action pursuant to Federal Rule

injunction order, which enjoined the State from enforcing the ABC test codified in subdivision (a)(1) against trucking companies, is pending before the Ninth Circuit. See California Trucking Ass'n v. Becerra, No. 20-55106 (9th Cir.).

WSTA, for its part, also previously challenged the application of the ABC test to trucking companies under Dynamex before it was codified by AB 5, but the United States District Court for the Eastern District of California rejected that preemption challenge, dismissing the complaint with prejudice and entering final judgment against WSTA. See W. States Trucking Ass'n v. Schoorl, 377 F. Supp. 3d 1056, 1072 (E.D. Cal. 2019), appeal dismissed, No. 19-15794, 2019 WL 5212963 (9th Cir. Sept. 5, 2019).

Case 5:19-cv-02447-CAS-KK   Document 33   Filed 05/18/20   Page 6 of 14   Page ID #:264

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
|---|---|---|---|
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

of Civil Procedure 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. The burden of proof in a Rule 12(b)(1) motion is on the party asserting jurisdiction. See Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000).

Standing is a jurisdictional requirement, and the party invoking federal jurisdiction has the burden of establishing it. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). "To meet the constitutional threshold of Article III standing," the party invoking federal jurisdiction must allege that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [the defendant], and (3) that is likely to be redressed by a favorable judicial decision." Daniel v. Nat'l Park Serv., 891 F.3d 762, 766 (9th Cir. 2018) (citing Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016)).

Like standing, ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies[.]" Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967). The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Social Servs., Inc., 509 U.S. 43, 57, n. 18 (1993) (citations omitted). "The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases . . . coincides squarely with standing's injury in fact prong." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000). In cases concerning pre-enforcement challenges to enacted legislation or regulation, Article III ripeness requirements are satisfied if "the plaintiffs face a 'realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Id. at 1139 (quoting Babbit v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution" meets this standard. Thomas, 220 F.3d at 1139.

## IV.  DISCUSSION

The State and the IBT collectively move to dismiss on grounds that (a) WSTA lacks associational standing to pursue its pre-enforcement claim, (b) the pre-enforcement claim is not ripe, and (c) the complaint fails to state a claim for relief because the FAAAA does not preempt the challenged provisions of the California Labor Code.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
|---|---|---|---|
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

The Court addresses each argument in turn. Because the Court concludes that WSTA's complaint does not present a ripe justiciable controversy, see infra § IV.B, the Court does not reach the Rule 12(b)(6) motions, see infra § IV.C.

### A. Associational Standing

IBT contends that WSTA lacks associational standing (1) because its alleged injuries are illusory, since they result from a misinterpretation of the challenged provisions, and (2) because WSTA fails to allege that any individual WSTA member has been or will be injured by the challenged provisions. See IBT MTD at 10-13; IBT Reply at 2-6. WSTA responds that its members will suffer harm since the challenged provisions will be interpreted in the manner it asserts will harm its members' interests, and disputes that it needs to identify any specific injured members since their injuries are readily apparent. See Opp. at 6-18, 28-33.

IBT's first argument is unavailing. For the purposes of assessing the justiciability of WSTA's claims, the Court must assume the correctness of WSTA's legal arguments on their merits—whether or not they are actually valid. See Stop the Beach Renourishment, Inc. v. Fla. Dept. of Envtl. Prot., 560 U.S. 702, 729 n.10 (2010) ("accepting [plaintiff's] version of Florida law as true" in the justiciability analysis, despite subsequently rejecting the same substantive claims on the merits); United States v. Antelope, 395 F.3d 1128, 1133 (9th Cir. 2005) (assessing the satisfaction of Article III "from [plaintiff's] perspective, in whose shoes we stand when deciding this threshold issue of justiciability" and therefore assuming "his legal argument is correct"); United States v. Purvis, 940 F.2d 1276, 1278 (9th Cir. 1991) (plaintiff demonstrated standing because "[i]f his legal argument is correct, he has already suffered constitutional injury"); see also Flynt v. Rumsfeld, 355 F.3d 697, 702 (D.C. Cir. 2004) ("In order to test the . . . justiciability of [plaintiff's] claims, we . . . assume that they are otherwise valid.").

Here, assuming that its interpretation of the challenged statutory provisions is correct, WSTA has alleged facts sufficient to establish that its members would be required to reclassify any subcontractors they hire as employees, at great cost to their operations, if the challenged provisions were enforced against them. That alleged injury—if sufficiently imminent, but see infra § IV.B—is enough to invoke this Court's Article III jurisdiction. See Lorenz v. Safeway, Inc., 241 F. Supp. 3d 1005, 1014 (N.D. Cal. 2017) (concluding that plaintiff had standing, "[r]egardless of whether [the plaintiff] has advanced a plausible

Case 5:19-cv-02447-CAS-KK   Document 33   Filed 05/18/20   Page 8 of 14   Page ID #:266

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
|---|---|---|---|
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

theory" on the merits, because "the Court assumes the merits of his legal claim for purposes of the standing analysis.").

Nor does WSTA lack associational standing because it fails to identify which of its members would be injured by the challenged provisions. It is well-established that "an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977). Neither IBT nor the State contest the second or third elements. Instead, IBT cites the Supreme Court's holding in Summers v. Earth Island Institute, 555 U.S. 488 (2009), to contend that the first element requires WSTA to identify which of its members would be harmed by the challenged provisions. But the holding in Summers—that an association meets the three-part standard in Hunt when "at least one identified member had suffered or would suffer harm," id. at 498—does not, as IBT contends, additionally require an association to identify an injured individual member. See Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1041 (9th Cir. 2015) (rejecting contention that Summers "stands for the proposition that an injured member of an organization must always be specifically identified in order to establish Article III standing for the organization"). The Ninth Circuit has explained that there is "no purpose to be served by requiring an organization to identify by name the member or members injured" when "it is relatively clear" that "one or more members have been or will be adversely affected by a defendant's action," and when "the defendant need not know the particular member to understand and respond to an organization's claim of injury[.]" Id. at 1041.

Assuming again for the limited purpose of the Court's justiciability analysis that WSTA's statutory interpretation is correct, its allegations meet this standard: according to WSTA, if the challenged provisions are enforced in the way WSTA reads them, they would require WSTA members to reclassify any subcontractors they hire as employees at great expense to their operations. These allegations, accepted to be true, make it "relatively clear" that any construction trucking service provider would be adversely affected by the challenged provisions, and there is little (if any) additional material understanding to be gained by forcing WSTA to divulge added information identifying its members at this juncture. Cegavske, 800 F.3d at 1041. Provided, once again, that the alleged injuries are sufficiently imminent, but see infra § IV.B, WSTA's allegations are enough to establish that WSTA members "would otherwise have standing to sue in their own right," and to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
|---|---|---|---|
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

permit WSTA to invoke this Court's Article III jurisdiction to sue on an associational basis. See, e.g., California Trucking Ass'n, 2020 WL 248993, at *5 (rejecting analogous associational standing argument advanced by IBT in a FAAAA preemption challenge by the California Trucking Association to subdivision (a)(1), and concluding that the California Trucking Association had "standing at this very preliminary stage," because IBT "offers no reason why it cannot address the predominately legal claims brought by CTA without the identification of a particular CTA member").

### B. Pre-Enforcement Ripeness

The State and IBT next contend that, even accepting the correctness of WSTA's legal argument, WSTA's pre-enforcement claim does not present a constitutionally ripe justiciable controversy since there is no imminent threat that WSTA or its members will be prosecuted, or held liable, under the challenged provisions. See IBT MTD at 13-14; IBT Reply at 6-7; CA MTD at 14-16; CA Reply at 8-10. WSTA responds that its claim is ripe (i) because "liability has likely already attached" such that a misclassified worker "could bring a wage/misclassification claim against a WSTA member at any time," (ii) because WSTA members need to "know[] whether they need to dramatically change their business models in order to insulate themselves" from "potential liability," and (iii) because there is an actual conflict between state and federal law. See Opp. at 37-41.

"[T]he threatened enforcement of a law creates an Article III injury" only when the party asserting the claim "alleges an intention to engage in" some proscribed "course of conduct" and "there exists a credible threat of prosecution thereunder." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014) (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979)). "In evaluating the genuineness of a claimed threat of prosecution," courts in the Ninth Circuit consider (1) "whether the plaintiffs have articulated a 'concrete plan' to violate the law in question," (2) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and (3) "the history of past prosecution" under the challenged law. Thomas, 220 F.3d at 1139. The party invoking jurisdiction bears the burden to establish all three elements in order to allege an actual case or controversy that survives a motion to dismiss. See Sacks v. Office of Foreign Assets Control, 466 F.3d 764, 773 (9th Cir. 2006) (dismissing claim on these grounds even though two out of three elements of the Thomas test were satisfied).

WSTA's allegations do not satisfy the second element in Thomas because WSTA has not alleged any "specific warning or threat" that the State, or anyone else, has sought

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

or is seeking to hold its members liable *under the challenged provisions*. See Thomas, 220 F.3d at 1139. The State has effectively disavowed any intent to prosecute WSTA members for violating the challenged provisions by misclassifying employees as independent contractors because the State does not construe those provisions to require WSTA members to reclassify their workers in the first place. See State MTD at 12 (expressing the State's regulatory understanding, not limited to a litigation position, that the challenged provisions only govern "the relationship between the licensed contractor and its subcontractor," not the relationship between a construction trucking company and any worker or workers it subcontracts with).[3] And WSTA does not allege that any trucking company has threatened to invoke the challenged provisions to obligate WSTA members to re-classify them as employees rather than independent contractors.[4]

---

[3] The State confirmed this position at the hearing on these motions, but made clear that it does not disavow enforcing other requirements of AB 5 against WSTA members, or disavow enforcing the challenged provisions against WSTA members in accordance with the State's construction of those provisions.

At oral argument, WSTA requested a finding that the State is judicially estopped from bringing future enforcement actions against WSTA members based on its representation that the State does not intend to enforce the challenged provisions in the manner that WSTA construes them in this action. The Court declines to make a finding as to estoppel at this juncture.

[4] In its opposition, WSTA points to contentions in IBT's motion to dismiss that more than more than 1,150 trucking service workers have filed misclassification suits against WSTA members since 2010. See Opp. at 37 (citing IBT MTD at 12). But even if the Court were to construe or take notice of material in IBT's brief as part of WSTA's complaint, it would not help because WSTA does not allege that any of these prior claims arose *under the challenged provisions*, nor—since the challenged provisions were just enacted—is it likely that any of those claims could have so arisen.

At the hearing on these motions, WSTA contended for the first time that some trucking companies have also come forward and specifically threatened to invoke the challenged provisions—and not other portions of AB 5—to obligate WSTA members to re-classify them as employees rather than independent contractors. These representations at oral argument, however, are not pleadings. See, e.g., Nat. Alternatives Int'l, Inc. v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
|---|---|---|---|
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

These facts and allegations demonstrate the opposite of an actionable threat of prosecution under the challenged provisions, and are insufficient to invoke this Court's jurisdiction. "[P]laintiffs [do] not demonstrate the necessary injury in fact where the enforcing authority expressly interpret[s] the challenged law as not applying to the plaintiffs' activities." Lopez v. Candaele, 630 F.3d 775, 788 (9th Cir. 2010) (citing cases and applying Thomas standard); see, e.g., Loyd's Aviation. Inc. v. Ctr. for Envtl. Health, No. 11-CV-01078 AWI, 2011 WL 4971866, at *3 (E.D. Cal. Oct. 19, 2011) (concluding that there was no justiciable case or controversy in a pre-enforcement action where "State Defendants have been unequivocal that there is no intention to bring any suit under [the subject law] against Plaintiffs"); Trustees of Operating Engineers Pension Tr. v. Smith-Emery Co., No. 19-CV-04058-CAS (AFMx), 2019 WL 5595047, at *18 (C.D. Cal. Oct. 28, 2019) (finding no threat of prosecution under Thomas where "the State Agencies evince[d] no intent to initiate enforcement proceedings against" the claimant).

Nor is this a case like Stormans, Inc. v. Selecky, 586 F.3d 1109 (9th Cir. 2009), where, even absent an actual threat of enforcement, plaintiffs present a ripe claim for relief because they have already been subject to adverse consequences based on the anticipation of enforcement. Stormans involved a challenge to rules promulgated by the Washington State Pharmacy Board that required pharmacists to fill prescriptions for birth control drugs. The court found a justiciable controversy, even though the Pharmacy Board had not threatened any action against two of the pharmacist plaintiffs, because those two plaintiffs had already been threatened by employers who anticipated adverse enforcement action. Id. at 1124 (holding that plaintiff Mesler's claim was ripe because her "employer has informed her that it will not be able to accommodate her refusal to dispense Plan B," and holding that plaintiff Thelen's claim was ripe because "[h]er employer told her 'it would not work for [her] to remain employed there'"). Here, there is no comparable allegation that any WSTA member has been threatened with adverse action, of any kind, by anyone, under the challenged provisions.

Accordingly, even crediting WSTA's contention on the first Thomas element—by assuming the correctness of its statutory interpretation—that its members' intentions to

---

Allmax Nutrition, Inc., No. 16-CV-01764-H-AGS, 2017 WL 11421527, at *5 n.3 (S.D. Cal. Aug. 28, 2017) ("[A]n argument presented in an opposition to a Rule 12 motion is not an allegation in a complaint."). Unless and until alleged, they cannot provide the basis for a justiciable controversy.

Case 5:19-cv-02447-CAS-KK   Document 33   Filed 05/18/20   Page 12 of 14   Page ID #:270

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

continue current operations amount to a plan to "violate" the challenged provisions, and even setting aside the third Thomas element because this element "has little weight" where, as here, the challenged provisions are "relatively new," Wolfson v. Brammer, 616 15 F.3d 1045, 1060 (9th Cir. 2010), because WSTA does not allege a "credible threat of prosecution" under the challenged provisions, and because the State has effectively foresworn any intent to prosecute WSTA or its members under those provisions, the threatened injuries WSTA asserts do not generate a justiciable controversy. See Thomas, 220 F.3d at 1140 (holding that plaintiffs' claim was not ripe since "[t]he threat of enforcement based on a future violation—which may never occur—is beyond speculation").

None of WSTA's three counterarguments change this conclusion.

First, the allegation that WSTA members are already subject to liability and "could" become defendants in a misclassification suit at most alleges "the mere existence of a proscriptive statute" and "a generalized threat of prosecution," "neither" of which are sufficient to establish a ripe controversy. Thomas, 220 F.3d at 1139.

Second, the allegation that WSTA members have an urgent need to understand their potential liability under the challenged provisions is also inadequate since "bare uncertainty" about one's potential exposure to a regulation—"absent any concrete application that threatens imminent harm to their interests"—"cannot support" the existence of a ripe controversy. Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice, 816 F.3d 1241, 1250 (9th Cir. 2016) (citations and internal marks omitted).

And third, the allegation that the challenged state provisions are incongruous with federal law does not make WSTA's preemption claim ripe by itself. WSTA cites no authority that supports this sweeping and plainly erroneous proposition, which, if it were correct, would effectively eliminate constitutional ripeness requirements for any preemption claim, an outcome at odds with established Supreme Court precedent. See, e.g., Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 203 (1983) (holding that a Federal Atomic Energy Act preemption challenge to a California state statutory provision was not ripe for adjudication, even though plaintiff alleged a conflict).

The cases WSTA does cite in support of this third argument stand only for the limited proposition, not met here, that a preemption action is ripe either where the federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

government has taken action to discredit or invalidate the challenged state law, or where some action arising from the conflicting provisions is "certainly impending." See Conference of Fed. Sav. and Loan Ass'ns v. Stein, 604 F.2d 1256, 1259 (9th Cir. 1979) (cited in Opp. at 40) (holding that a preemption action by federal savings and loan associations challenging a state lending regulation presented a justiciable controversy, but only because the relevant federal regulator provided plaintiffs "with an opinion that the state act did not apply to federal savings and loan associations"); First Fed. Sav. and Loan Ass'n of Boston v. Greenwald, 591 F.2d 417, 423 (1st Cir. 1979) (cited in Opp. at 40) (same); N.L.R.B. v. North Dakota, 504 F. Supp. 2d 750, 754 (D.N.D. 2007) (cited in Opp. at 41) (holding that a preemption action by the National Labor Relations Board to protect its jurisdiction from a conflicting state statute presented a justiciable controversy since the agency had affirmatively taken a position in conflict with the state); Employers Ass'n, Inc. v. United Steelworkers of Am., 32 F.3d 1297, 1299-1300 (8th Cir. 1994) (cited in Opp. at 41) (federal preemption challenge to state labor law prohibiting employers from hiring permanent replacements for striking workers presented a justiciable controversy "even without any enforcement action" only because it was all but certain that the defendant union "would . . . avail itself of the state law's protections"). In contrast with these cases, WSTA does not allege facts indicating that any federal regulator has taken any action to discredit or invalidate the challenged provisions, or demonstrating that any subcontracted worker will certainly "avail itself" of the challenged provisions to reclassify its employment status at some point.

The Court cannot exercise jurisdiction over this action consistent with the limits proscribed by Article III in these circumstances. The motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) are hereby granted.

### C.     Failure To State A Claim

The State and the IBT also contend that, even if WSTA had presented a justiciable controversy, its complaint fails to state a claim for relief because the FAAAA does not preempt the challenged provisions of the California Labor Code. But without jurisdiction, the Court cannot reach the merits of WSTA's preemption claim. See Herman Family Revocable Tr. v. Teddy Bear, 254 F.3d 802, 803 (9th Cir. 2001). The motions to dismiss on these grounds are, accordingly, moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:19-CV-02447-CAS (KKx) | Date | May 18, 2020 |
| Title | WESTERN STATES TRUCKING ASS'N v. BECERRA, ET AL. | | |

## IV. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the motions to dismiss pursuant to Rule 12(b)(1). The motions to dismiss pursuant to Rule 12(b)(6) are **DENIED AS MOOT**.

The effective date of this order is hereby **STAYED** for **30 days**, during which time the action will remain pending and WSTA shall be permitted to file a first amended complaint as of right pursuant to Federal Rules of Civil Procedure 15 and 21. If at the end of 30 days no amended pleading is filed that supersedes the complaint addressed in this order, this order shall become final and the action will be dismissed.

IT IS SO ORDERED.

                                                          00  :  20
                                  Initials of Preparer        CMJ